# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 17-CR-553 (FAB) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SENTENCING HEARING |
| | ) | |
| JAVIER GOMEZ-CARRASQUILLO, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Friday, September 14, 2018

APPEARANCES:

For the United States:  MARIE CHRISTINE AMY, AUSA
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, PR 00918

For the Defendant:  LILLIAN N. MIRANDA-RODRIGUEZ, ESQ.
Miranda & Roque
P.O. Box 6525
San Juan, PR 00914-6525

Produced by mechanical stenography; computer-aided transcription

Joe Reynosa, CSR, RPR
Official Court Reporter

(PROCEEDINGS COMMENCED AT 9:35 A.M.)


THE CLERK: Criminal Case No. 17-553, United States of America versus Javier Gomez-Carrasquillo for Sentencing Hearing.

On behalf of the Government, Assistant United States Attorney Marie Christine Amy.

On behalf of the Defendant, Attorney Lillian N. Miranda-Rodriguez.

Defendant is present and assisted by the certified court interpreter.

MS. AMY: Good morning, Your Honor. The United States is ready to proceed.

MS. MIRANDA-RODRIGUEZ: Good morning, Your Honor. Attorney Lillian Miranda on behalf of Javier Omar Gomez-Carrasquillo. We are ready to proceed.

THE COURT: Ms. Miranda, is there anything you would like to say on behalf of Mr. Gomez before I pronounce sentence?

MS. MIRANDA-RODRIGUEZ: Yes, Your Honor.

We would like to clarify that we are requesting that he will be sentenced to the lower end of the applicable guideline in this case.

This is a young man. He is 24 years old, and he is very repentant of his conduct.

1.         His family is here fully supporting him. He has
2. been working steadily since 2013, and he would like an
3. opportunity to study in prison and to make himself better in
4. prison.
5.         That's all.
6.         THE COURT: Ms. Amy, anything?
7.         MS. AMY: Yes, Your Honor.
8.         First of all, we just would like for Defense
9. Counsel to state for the record whether she is withdrawing
10. the latest sentencing memorandum where she is requesting --
11.         THE COURT: I think she has. She has requested the
12. lower end.
13.         MS. AMY: Yes, I heard that, Your Honor. But since
14. that is on the docket --
15.         THE COURT: So we will take that as withdrawing.
16.         MS. AMY: Thank you.
17.         In this case, Your Honor, the plea agreement
18. between the parties is that the Government is allowed to
19. request the higher end of the guideline range, which in this
20. case is 46 months. And that is what the Government is
21. requesting in this case.
22.         This is a situation where the Defendant willingly,
23. knowingly, and willfully engaged in the business of dealing
24. firearms or, basically, selling firearms, and he did. In
25. this case he was charged for doing that in two different

1  occasions for -- in one occasion for $2,700, and in another
2  occasion I believe it was $2,500.  And he sold, in one
3  occasion, an Anderson rifle, which is an AM-15.
4              THE COURT:  It's an assault rifle.
5              MS. AMY:  Exactly.
6              And in the other occasion, he sold a Bushmaster
7  rifle.
8              THE COURT:  What's the caliber of the Bushmaster
9  rifle?
10             MS. AMY:  It's a multi-caliber, because it can --
11             THE COURT:  It's also an assault rifle.
12             MS. AMY:  Yes, Your Honor.
13             And in one of the occasions, at least, the magazine
14 was an extended magazine.  As it is contained in Count Two of
15 the indictment, that particular rifle magazine allowed for
16 29 rounds of .223 caliber ammunition.
17             And this is a case where the Defendant was recorded
18 dealing in those transactions or doing those transactions,
19 and we believe the seriousness of the offense warrants the
20 higher end of the guidelines.
21             I understand that the Defendant doesn't even argue
22 that his childhood has been a very difficult one.  He says
23 that he had a happy childhood, despite the fact that his
24 father left at some point, and their parents divorced, but he
25 had another person in his life, another male in his life who

was good to him.  He had a lot of opportunities in life.  And he says that it was pure ignorance that made him commit the offenses, but we think that's no excuse, and that is no mitigating factor in this case.

This person was allowing for illegal -- for the illegal sale and for persons, obviously, who did not have a firearm's license, to have rifles out there on the street. And considering the situation in Puerto Rico regarding violence crimes and the amount of firearms -- illegal firearms that are on the street, we believe this is one of those serious offenses that warrant the higher end of the guideline range.

So, for those reasons, Your Honor, we ask that he be sentenced to 46 months of imprisonment.

MS. MIRANDA-RODRIGUEZ:  Yes, Your Honor.

Just to correct the AUSA attorney.  In the pre-sentence report, there is evidence that he was severely traumatized by the divorce of his parents, and he sought psychological treatment.

Also, there is evidence in the pre-sentence report that he had to withdraw from studying barbershop because of economic hardship.

He is severely traumatized by this ordeal.  He is very repentant, and he has been -- he was a special education student, that was stigmatized and was very ashamed of his

1  special education needs and had to withdraw from treatment.
2           MS. AMY:  Judge, if I may, just very briefly.
3           This is not the first arrest of the Defendant.  And
4  I understand what counsel is saying, but we didn't mention --
5  because it's right there in the pre-sentence report.  And
6  even though it's only one point for criminal history, he was
7  arrested in 2013 for transporting, disposing and receiving
8  illegal goods.  Even though we don't have all the facts of
9  the case, we do know what kind of conduct that was, and for
10 that he was fined.  He was given an opportunity at the age of
11 19.
12          And at the age of 22, he was arrested for
13 conspiracy with intent to distribute controlled substances.
14 That case was dismissed.  And we don't know the specifics
15 either of that case because the information is not available
16 at this time, but that was only in 2017.  And the level of
17 the offense, obviously, became more serious after the first
18 arrest.  And at this time he was arrested with dealing with
19 firearms.
20          So I think the fact that he, obviously, had some
21 trauma, like any other person -- normal person would have had
22 growing up, it doesn't rise to the level of mitigating the
23 conduct.
24          THE COURT:  Mr. Gomez, is there anything you would
25 like to say?

1  DEFENDANT GOMEZ-CARRASQUILLO: Well, good morning,
2  every body here present.
3      I would like to apologize to my family. I
4  apologize to the United States for my bad acts. I know they
5  were not good, but I am a little repentant for my acts, for
6  what I have done. I am repentant with my family or before my
7  family because I've had -- for what I had to make them go
8  through and even go to court and even visits to jail.
9      That would be all.
10     THE COURT: On May 10th, 2018, Defendant Javier
11 Gomez-Carrasquillo pled guilty to Counts One and Two of the
12 indictment in Criminal Case No. 17-553, which charges
13 violations of Title 18, United States Code section
14 922(a)(1)(A), engaging in the business of dealing firearms
15 without a license, which are class D felonies.
16     The November 1st 2016 Edition of the Sentencing
17 Guidelines Manual has been used to calculate the guideline
18 adjustments pursuant to the provisions of guideline
19 section 1B1.11(a).
20     Both counts were grouped together pursuant to
21 sentencing guideline section 3D1.2(d) because the offense
22 behavior was ongoing and the offense guideline, sentencing
23 guideline section 2K2.1, was written to cover that behavior.
24     Based on the provisions of guideline section 2K2.1,
25 a base offense level of 20 has been determined because

Mr. Gomez has been convicted of possessing semi-automatic firearms that are capable of accepting large capacity magazines, and he admitted that he was a prohibited person, a drug user, at the time he committed the offenses.

Because Mr. Gomez engaged in the trafficking of firearms, the base offense level is increased by four levels pursuant to sentencing guideline section 2K2.1(b)(5).

Because Mr. Gomez timely accepted responsibility for his offenses, however, the offense level is reduced by three levels pursuant to guideline sections 3E1.1(a) and 3E1.1(b).

There are no other applicable guideline adjustments. His total offense level is 21.

Because Mr. Gomez has been previously convicted of receiving, transporting, and disposing of illegal goods by the Bayamón Superior Court, one criminal point resulted, which places him in Criminal History Category I.

Mr. Gomez was previously arrested for three cases of conspiracy to possess with intent to distribute controlled substances at the San Juan Superior Court. Because the cases were dismissed, however, no criminal history points resulted from those arrests.

Based on a total offense level of 21 and a Criminal History Category of I, the guideline imprisonment range for Mr. Gomez's offenses is from 37 to 46 months.

1    There is a fine range of $15,000 to $150,000, plus
2 a supervised release term of not more than three years.
3    The probation officer has correctly applied the
4 guideline computations, and the pre-sentence investigation
5 report satisfactorily reflects the components of Mr. Gomez's
6 offenses by considering their nature and circumstances.
7    The Court has also considered the other sentencing
8 factors set forth in Title 18, United States Code
9 section 3553(a).
10    Mr. Gomez is 24 years old.  He completed high
11 school through a GED program, was employed at a supermarket
12 prior to his arrest for his offenses, and he has a history of
13 using marijuana daily.
14    He has requested a sentence at the low end of the
15 guideline range, and the Government has argued for a sentence
16 at the high end.
17    The Court finds that neither recommended sentence
18 reflects the seriousness of the offenses, promotes respect
19 for the law, protects the public from further crimes by
20 Mr. Gomez, or addresses the issues of deterrence and
21 punishment.
22    The Court has taken into consideration that the
23 District of Puerto Rico ranks among the nations most violent
24 jurisdictions.  Mr. Gomez possessed and sold to an uncover
25 agent a Bushmaster assault rifle, Model XM-15E25,

1  multi-caliber, with serial number BFI1469842, with one rifle
2  high capacity ammunition magazine, and 29 rounds of .223
3  caliber ammunition; and on a second occasion, an Anderson
4  assault rifle, Model AM-15, also multi-caliber, with serial
5  number 16419491, also with an extended rifle magazine.
6              The Court will, therefore, consider Puerto Rico's
7  high firearms and violent crime rate in imposing a sentence.
8              The impact of this particular offense, dealing in
9  firearms, is more serious than that considered by the
10 Sentencing Commission when it drafted the guidelines.
11             Accordingly, it's the judgment of the Court that
12 Javier Gomez-Carrasquillo is committed to the custody of the
13 Bureau of Prisons to be imprisoned for a term of 60 months.
14             Upon release from confinement, Mr. Gomez shall be
15 place on supervised release for a term of three years as to
16 each count, or 60 months as to each count, to be served
17 concurrently with each other.
18             Upon release from confinement, Mr. Gomez shall be
19 placed on supervised release for a term of three years as to
20 each count, to be served concurrently with each other, under
21 the following terms and conditions:
22             He shall observe the standard conditions of
23 supervised release recommended by the United States
24 Sentencing Commission and adopted by this Court.
25             He shall not commit another Federal, State, or

local crime.

He shall not possess firearms, destructive devices, or other dangerous weapons.

He shall not possess controlled substances unlawfully and shall submit to a drug test within 15 days of release from imprisonment.

After his release, Mr. Gomez shall submit to random drug testing, not less than three samples during the supervision period, but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office, as has been approved by this Court.

If the illegal use of controlled substances is detected in any sample, Mr. Gomez shall participate in an inpatient or an outpatient substance abuse treatment program for evaluation or treatment as arranged by the probation officer.

Payment shall be based on his ability to pay or the availability of payments by third parties as approved by the Court.

He shall perform 300 hours of unpaid community service work during the supervision period at a private, nonprofit, or public facility to be selected and under the arrangements that the probation officer may determine.

He shall participate in vocational training and a

1  job placement program as recommended by the probation
2  officer.
3           He shall provide the probation officer access to
4  any financial information upon request.
5           He shall cooperate in the collection of a DNA
6  sample as directed by the probation officer pursuant to the
7  revised DNA collection requirements and Title 18, United
8  States Code section 3563(a)(9).
9           He shall submit himself and his property, house,
10 residence, vehicles, papers and effects, computers and other
11 electronic communication or data storage devices or media to
12 a search, at any time, with or without a warrant, by the
13 probation officer and, if necessary, with the assistance of
14 any other law enforcement officer, but only in the lawful
15 discharge of the supervision functions of the probation
16 officer, who must have a reasonable suspicion of unlawful
17 conduct or of a violation of a condition of supervised
18 release.
19          The probation officer may seize any electronic
20 communication or electronic device or medium, which will be
21 subject to further forensic investigation or analysis.
22          Failure to permit a search and seizure may be
23 grounds for revocation of supervised release.
24          Mr. Gomez shall warn any other resident or occupant
25 that his premises may be subject to searches pursuant to this

1   condition.
2           Having considered Mr. Gomez's financial condition,
3   a fine is not imposed.
4           A special monetary assessment in the amount of $100
5   per count, for a total of $200, is imposed, however, as
6   required by law.
7           Mr. Gomez, you have entered into a plea agreement
8   in which you waived your right to appeal your conviction and
9   sentence.  That waiver is enforceable.  But if your waiver is
10  unenforceable, you may present that argument to the Appellate
11  Court.
12          A notice of appeal must be filed within 14 days of
13  judgment being entered in your case.
14          If you are unable to pay the cost of an appeal, you
15  may apply for leave to appeal *in forma pauperis.*
16          If you request it, the Clerk of the Court will
17  prepare and file a notice of appeal on your behalf.
18          Is there any particular institution that you would
19  like me to recommend?
20          MS. MIRANDA-RODRIGUEZ:  No, Your Honor.
21          THE COURT:  In whatever institution you may be
22  designated, Mr. Gomez, if there are classes in English as a
23  Second Language, please take advantage of them.
24          Also, take advantage of any vocational training
25  available at the institution, and I will recommend that you

1  participate, if you qualify, in the 500-hour drug and alcohol
2  treatment program offered by the Bureau of Prisons.
3          Anything else?
4          MS. MIRANDA-RODRIGUEZ:  Nothing else.
5          THE COURT:  You are excused.
6
7          (PROCEEDINGS ADJOURNED AT 9:55 A.M.)

Joe Reynosa, CSR, RPR
Official Court Reporter

| | |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | |
| 3 | I, JOE REYNOSA, Official Court Reporter for the |
| 4 | United States District Court for the District of Puerto Rico, |
| 5 | appointed pursuant to the provisions of Title 28, United |
| 6 | States Code, Section 753, do hereby certify that the |
| 7 | foregoing is a true and correct computer-aided transcript of |
| 8 | proceedings had in the within-entitled and numbered cause on |
| 9 | the date herein set forth; and I do further certify that the |
| 10 | foregoing transcript has been prepared by me or under my |
| 11 | direction. |

S/Joe Reynosa
_____

**JOE REYNOSA, CSR, RPR**
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardón Street
San Juan, Puerto Rico 00918-176
(787) 772-3000